IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| COLE JAMAL DANIELS, | : | MOTION TO VACATE |
|    Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:15-CR-0437-LMM-LTW-1 |
| | : | |
| UNITED SATES OF AMERICA, | : | CIVIL ACTION NO. |
|    Respondent. | : | 1:22-CV-1477-LMM-LTW |

## FINAL REPORT AND RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of Cole Jamal Daniels' *pro se* motions under 28 U.S.C. § 2255. (Docs. 39-40), the government's responses thereto (Docs. 50-51), and Daniels' reply (Doc. 54). For the reasons that follow, the undersigned **RECOMMENDS** that Daniels' § 2255 motions [39; 40] be **DENIED**.

### I.  Procedural History

The government filed a criminal information against Daniels, charging him with use of a facility in interstate commerce with intent to promote, manage, establish, carry on and facilitate an unlawful activity, that is, prostitution, and thereafter committing a crime of violence to further said unlawful activity, in violation of 18 U.S.C. § 1952(a)(3)(B). (Doc. 1.) Represented by Thomas L.

Hawker and Jeffrey Lynn Ertel of the Federal Public Defender Program, Inc., Daniels waived indictment and pled guilty pursuant to a negotiated plea agreement in which the government agreed to dismiss any and all remaining counts in *United States v. Daniels*, No. 1:13-CR-0454-WSD-CMS-1 (N.D. Ga. Nov. 22, 2013). (Docs. 2-3; 10.)  The plea agreement included an appeal waiver provision, which provided that Daniels

> voluntarily and expressly waives the right to appeal his conviction and sentence, as well as the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, a habeas corpus petition or any other motion filed pursuant to 28 U.S.C. § 2255) on any ground, except that [Daniels] may file a direct appeal of an upward departure or variance above the Guideline range as calculated by the Court.  Claims that [Daniels'] counsel rendered constitutionally ineffective assistance are exempted from this waiver.

(Doc. 3-1 at 8.)

At the plea hearing, Daniels was placed under oath and confirmed that he understood the rights he was giving up by pleading guilty and was willing to give up those rights.  (Doc. 10 at 3, 5-14.)  The government summarized the terms of the plea agreement, including the appeal waiver, and Daniels agreed with the prosecutor's description of the plea agreement.  (*Id.* at 14-19.)  Daniels confirmed that his attorneys had reviewed the plea agreement and its terms with him, that he understood the terms of the plea agreement, and that no one had promised him

2

anything not contained in the plea agreement. (*Id.* at 19-20.) Daniels also acknowledged that no one had threatened or forced him to plead guilty, promised him a particular sentence, or told him not to tell the complete truth. (*Id.* at 20.) Daniels confirmed that he had sufficient time to think about and discuss his decision to plead guilty with his attorneys and that he was satisfied with their representation. (*Id.* at 22.)

Next, the government reviewed the elements of the offense to which Daniels was pleading guilty, including that Daniels "performed a crime of violence in furtherance of . . . prostitution," and Daniels affirmed that he understood those elements. (*Id.* at 23-24.) Daniels faced a possible maximum sentence of twenty years of imprisonment and understood that the Court would consider the United States Sentencing Guidelines but was free to impose a sentence outside of the advisory guidelines range and was not obligated to follow the sentencing recommendations in the plea agreement. (*Id.* at 24-31, 36-37.) The Court then explained that Daniels had given up his rights to file a direct appeal or a collateral attack of his conviction and sentence unless his attorneys rendered constitutionally ineffective assistance, the Court imposed a sentence greater than the guidelines range, or the government files an appeal. (*Id.* at 31-33.) Daniels confirmed that he understood the appeal waiver. (*Id.* at 33.)

3

The government summarized what the evidence would show if the case went to trial, namely that Daniels communicated via "text message, phone calls, Facebook chats, [and] other kinds of internet chats" with D.G., a minor female, "with the intent to entice her to travel from New Jersey to Georgia and engage in prostitution once she arrived here," that Daniels paid for D.G.'s bus ticket to Atlanta, and that she arrived in Atlanta on September 20, 2013, where she engaged in "multiple acts of prostitution [between] September and early October 2013." (*Id.* at 39.)  Daniels facilitated D.G.'s "prostitution by posting advertisements of her on the internet, transporting her to prostitution engagements, and providing her with condoms and hotel rooms that were used for prostitution activities." (*Id.*) Furthermore, "[o]n at least one occasion," Daniels "choked and struck [D.G.] when he learned that she hoped or planned to leave him and stop engaging in . . . the prostitution that he was facilitating." (*Id.* at 40.)  Daniels understood and agreed with the government's description and admitted that he knowingly engaged in that criminal conduct and was guilty of the crime charged in the information. (*Id.*)

After Daniels confirmed that he had signed the plea agreement, the Court accepted his plea, finding that he understood "the charge and the consequences of pleading guilty," that the plea was not "coerced in any way," and that the plea was voluntarily made with full understanding of the consequences of his plea. (*Id.* at

4

41-43.)  At sentencing, the Court determined that Daniels' guidelines range was 188 to 235 months of imprisonment, (Doc. 11 at 3), and, on March 22, 2016, the Court entered judgment sentencing petitioner to 220 months of imprisonment, (Doc. 7.)

On December 6, 2018, Daniels filed a counseled § 2255 motion, challenging his "sentencing enhancement" for having committed a violent crime. (Doc. 14.) The Court denied the motion, finding that Daniels had pled guilty to violating § 1952(a)(3)(B), which carries a statutory maximum sentence of twenty years of imprisonment when the defendant commits "any crime of violence to further any unlawful activity," and that the statutory maximum sentence for the crime to which Daniels pled guilty is not a "sentencing enhancement"; and therefore, Daniels' argument that his sentence was unconstitutionally "enhanced" lacked merit. (Doc. 25 at 4-8.)  The Court denied Daniels' § 2255 motion without prejudice so that a later motion to vacate would not be subject to the restrictions on successive motions and expressed no opinion as to whether the appeal waiver in Daniels' plea agreement would bar a subsequent motion to vacate. (*Id.* at 8.)  Daniels filed a motion for reconsideration (Doc. 28), which the Court denied, noting that Daniels had confirmed his understanding, at the plea hearing, that an element of the offense to which he was pleading guilty was committing a crime of violence in furtherance

5

of prostitution (Doc. 31 at 6). The United States Court of Appeals for the Eleventh Circuit denied Daniels' motion for a certificate of appealability on January 17, 2020, agreeing that Daniels had challenged his conviction, rather than his sentence, and therefore, based on his plea, his sentence did not exceed the applicable statutory maximum. (Doc. 38.)

Daniels submitted a second § 2255 motion on March 9, 2022 (Doc. 39 at 10) and a third on April 17, 2022 (Doc. 40 at 18). In both motions, Daniels argues that his conviction is unconstitutional and his guilty plea is invalid based on the United States Supreme Court's recent decision in *Borden v. United States*, 141 S. Ct. 1817 (2021), which held that offenses that can be committed with a mens rea of recklessness cannot qualify as "violent felonies" under the Armed Career Criminal Act ("ACCA"), and on the Eleventh Circuit's decision in *United States v. Moss*, 920 F.3d 752, 759 (11th Cir. 2019) (holding that, "[b]ecause Georgia's aggravated assault statute, O.C.G.A. § 16-5-21(a)(2) (2000), can be satisfied by a mens rea of recklessness when based on simple assault under § 16-5-20(a)(2), it cannot qualify as a crime of violence under the elements clause of the ACCA"), *opinion reinstated*, 4 F.4th 1292 (11th Cir. 2021). (Docs. 39 & 40.) Daniels asserts that, because his plea did not specify the underlying "crime of violence" and "§ 16-5-21(a)(2) cannot serve as a 'crime of violence,'" his guilty plea was not intelligently

and knowingly entered. (Doc. 39 at 6-7). The government responds that the appeal waiver in Daniels' plea agreement bars his § 2255 motions and that his claims challenging his conviction and the validity of his guilty plea are procedurally defaulted and lack merit. (Doc. 50 at 11-41.) Daniels replies that claims, such as those he brings, can never be waived or procedurally defaulted and reasserts the merits of those claims. (Doc. 54.)

## II.     Discussion

### A.     Validity of Guilty Plea

Daniels maintains that his guilty plea is invalid because neither the plea agreement nor the plea hearing specified the underlying crime of violence to support his conviction under § 1952(a)(3)(B), and aggravated assault under § 16-5-21(a)(2) cannot serve as the underlying crime of violence. (Doc. 39 at 6-7; Doc. 40 at 6-9.) "To satisfy due process, a guilty plea must be entered knowingly and voluntarily." *United States v. Hepburn*, 798 F. App'x 447, 451 (11th Cir. 2020) (per curiam) (citation omitted). In order to accept a guilty plea, a court must ensure, among other things, "that the defendant . . . understands the nature of the charges[; and t]here is a strong presumption that the statements made during the [plea] colloquy are true." *Id.* (citations omitted). "[T]here is no one mechanical way or precise juncture that a district court is required to inform the defendant of the nature

7

of the charges." *United States v. Wiggins*, 131 F.3d 1440, 1443 (11th Cir. 1997) (per curiam). "Rather, the inquiry varies from case to case depending on 'the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence.'" *United States v. DePace*, 120 F.3d 233, 237 (11th Cir. 1997) (citation omitted).

This Court has found no "authority suggesting that [it] was required to inform [Daniels] of the specific 'crime of violence' the government believes he committed or attempted to commit." *United States v. Kerns*, 9 F.4th 342, 350 (6th Cir.), *cert. denied*, 142 S. Ct. 368 (2021). In a recent case, the Eleventh Circuit found that the district court had adequately informed the defendant of the nature of the charges against him, namely four counts of knowingly brandishing a firearm during a crime of violence, even though "the court did not list the elements of the offense," because

> the crimes were not complex, and the colloquy otherwise shows that [defendant], who attended school through twelfth grade, . . . confirmed that he had reviewed the indictment and plea agreement [and] . . . expressly agreed to a detailed factual proffer describing how he used and brandished guns during four robberies.

*United States v. Mateo*, No. 20-13658, 2022 WL 248076, at *3 (11th Cir. Jan. 26, 2022) (per curiam). In so holding, the Eleventh Circuit noted "that a defendant's

8

express assent to a detailed factual proffer showed that he 'well understood the nature of the two charges against him.'" *Id.* (citation omitted).

Here, Daniels, who has "some college," pled guilty to a relatively simple offense, and, during the plea hearing, the government reviewed the elements of that offense, including that he had "performed a crime of violence in furtherance of . . . prostitution," and Daniels affirmed that he understood those elements. (Doc. 10 at 3, 23-24.) Daniels further confirmed that he had discussed those elements with his attorneys and understood them. (*Id.* at 24.) Daniels also expressly agreed with the government's detailed factual proffer, including that, "[o]n at least one occasion," he "choked and struck [the victim] when he learned that she hoped or planned to leave him and stop engaging in . . . the prostitution that he was facilitating." (*Id.* at 39-40.) These facts could constitute an aggravated assault based on a simple assault under O.C.G.A. § 16-5-20(a)(1) where the offender "[a]ttempts to commit a violent injury to the person of another," which remains a "crime of violence" after *Moss*.[1]

---

[1] Even if the government previously conceded that Daniels' underlying "crime of violence" was an aggravated assault based on a simple assault under § 16-5-20(a)(2), which no longer qualifies as a "crime of violence" after *Moss*, this earlier concession "does not bind" the Court. *Ziglar v. United States*, 757 F. App'x 886, 890 (11th Cir. 2018) (per curiam).

Accordingly, the record shows that Daniels understood the nature of the charge against him, and thus, his challenge to the validity of his guilty plea fails.

B.      Waiver of Challenge to Constitutionality of Conviction

"An appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues or even blatant error." *United States v. Grinard-Henry*, 399 F.3d 1294, 1296 (11th Cir. 2005) (citation omitted). "[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Brady v. United States*, 397 U.S. 742, 757 (1970).

"An appeal waiver is valid if a defendant enters into it knowingly and voluntarily." *United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006) (citation omitted).

> [F]or a sentence-appeal waiver to be enforceable, "[t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver."

*Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005) (citation omitted). The United States Supreme Court has held that

> the representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent

collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Daniels signed the plea agreement (Doc. 3-1 at 9) and, at the plea hearing, confirmed that he had reviewed it with his attorneys, understood its terms, and was voluntarily agreeing to those terms without threat, force, or other inducement, (Doc. 10 at 14-20). The Court specifically questioned Daniels about the appeal waiver, and it is clear that he understood the full significance of the waiver. (*Id.* at 31-33.) Daniels has not alleged that the statements he made during his plea colloquy were false. Accordingly, the undersigned finds that Daniels voluntarily and intelligently waived his right to appeal his conviction and sentence and to pursue any other collateral post-conviction relief. Thus, Daniels' challenge to the constitutionality of his conviction based on *Borden* and *Moss* is barred by his valid appeal waiver, which expressly waived his right to collaterally attack his conviction *on any ground*, even assuming that this claim presents a jurisdictional challenge. *Bascomb*, 451 F.3d at 1294; *Grinard-Henry*, 399 F.3d at 1296. *See also United States v. Joseph*, 811 F. App'x 595, 597-98 (11th Cir. 2020) (per curiam) (holding that defendants' "plea agreements waived their rights to appeal their convictions based on the

11

constitutionality of the statutes of conviction and whether the admitted conduct fell within the scope of the statutes of conviction"); *Oliver v. United States*, 951 F.3d 841, 845 (7th Cir. 2020) ("[O]ne major purpose of an express waiver is to account in advance for unpredicted future developments in the law.  Waivers, [which expressly waive defendant's right to appeal or collaterally attack his conviction or sentence *on any ground*], are intended to cover" challenges to the validity or constitutionality of a conviction based on a change in the law.); *United States v. Maillet*, 460 F. App'x 292, 294 (5th Cir. 2011) (per curiam) (Defendant's "constitutional challenge to the statute of conviction . . . is barred by his knowing and voluntary appeal waiver.").

### III. Certificate of Appealability

A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability ["COA"] under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1).  Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists

could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted).

A COA is not warranted here because, based on the foregoing discussion of Daniels' grounds for relief, the resolution of the issues presented is not debatable by jurists of reason.

### IV. Conclusion

For the foregoing reasons, the undersigned **RECOMMENDS** that Daniels' § 2255 motions [39; 40] and a COA be **DENIED** and that civil action number 1:22-CV-1477-LMM-LTW be **DISMISSED**.

**SO RECOMMENDED**, this   25   day of     July     , 2022.

_____
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE